HOUSTON, Justice.
Industrial Technologies, Inc., and its owner, Richard Hill, defendants in an action pending in the Jackson Circuit Court, petition for a writ of. mandamus directing Judge Randall L. Cole to set aside the following order and to enter a judgment in their favor:
“Jacobs Bank initiated, this action as a suit on a promissory note. The defendants Richard Hill and Industrial Technologies, Inc., filed a counterclaim against the bank for conversion of certain industrial equipment taken into possession as part of the collection effort.
“At a point during the course of the litigation, the parties agreed to a consent order dated September, 1995, which referred the dispute to ‘mediation and/Or arbitration’ and John D. Snodgrass, a retired circuit judge and practicing attorney, was named to serve as the ‘mediator/arbitrator.’ As a result of proceedings which ensued following the entry of the consent order, Judge Snodgrass has filed [an *235 ‘Amended Mediation/Arbitration Order’][1] with the court.
“The defendants/counter-plaintiffs have filed a motion requesting that the court enter judgment in accordance with Judge Snodgrass’s order. The bank, however, objects to the order. A hearing was conducted before this court on May 21, 1997, and the issue submitted is what legal effect, if any, should be given to the proceedings before Judge Snodgrass and the resulting order.
“The defendants/counter-plaintiffs contend that the proceeding before Judge Snodgrass was in the nature of an arbitration and that his order is a binding arbitration order.
“The bank contends, that the proceeding was in the nature of mediation and that nothing binding resulted.
“Following an extended period of settlement negotiations supervised by Judge Snodgrass, the parties entered into a stipulation of agreement which was announced to Judge Snodgrass in the presence of a court reporter on October 20, 1995. The stipulation set forth, in pertinent part, the following agreement:
“1. That certain industrial equipment was determined to be the property of defendants/eounter-plaintiffs and that such equipment had been converted by the bank on December 2,1992.
“2. That the fair market value of the equipment on December 2, 1992, would be determined by appraisers appointed by the parties, and that the parties would be bound by the determination of the appraisers.
“3. That the appraisers would also establish the value of the property in its present condition and that such value would be credited to the bank upon its return of the property.
“4. That Judge Snodgrass would determine, based upon evidence to be submitted to him, the appropriate interest factor to be used in computing the rental value of the equipment during its detention from December 2, 1992, through November 1, 1995. The parties would be bound by Judge Snodgrass’s determination of rental value.
“5. That in the event judgment should be rendered in favor of the defendants/counter-plaintiffs, then the bank would receive certain credit for prompt payment of the judgment.
“The order thereafter entered by Judge Snodgrass on September 24, 1996, found, in pertinent part, as follows:
“1. That the bank wrongfully converted defendants/counter-plaintiffs’ property.
“2. That the, appraised value of the property was $382,500.
“3. That the monthly rental value was 3%.
“4. That the property was detained for 35 months.
“5. That the salvage value of the property was $3,500.
“6. That a credit of $16,000 would be due the bank upon payment of the judgment within 10 days.
“7. That the rental value of the property during its wrongful detention was $401,-625 (applying the 3% interest factor to the value of the equipment).
“8. That the defendants/eounter-plain-tiffs were due to recover of the bank the rental value of $401,625 plus the value of the equipment on December 2, 1992, of $382,500 less $3,500 as salvage value for a total recovery of $780,625, less $16,000 if paid within 10 days after entry of judgment.
“This court finds that the proceeding that resulted in Judge Snodgrass’s order was neither a mediation nor an arbitration. What started as mediation led to the stipulation of agreement. Simply stated, the agreement provided 1) that the bank would pay damages; and 2) that the amount of damages would be determined by a specified procedure. Judge Snodgrass was to play a part in the calculation of damages, with his participation defined by the stipulation of agreement. The agreement dele *236 gated certain factfinding responsibilities to appraisers appointed by the parties and other factfinding to Judge Snodgrass. The agreement apparently contemplated that once these facts were established they would be inserted by Judge Snodgrass into a formula and that the damages award would thereby be calculated.
“The procedure being neither mediation nor arbitration, the issue becomes whether the stipulation of agreement entered into by the parties is contractually binding and due to be enforced.
“The court finds that the agreement is flawed by a major ambiguity that is fatal to its enforcement in that there was never a meeting of the minds of,the parties as to what formula would be used in calculating damages. The stipulation did not address the specifics of the formula, and it is evident that the parties each contemplated a different formula. '
“In correspondence to Judge Snodgrass before his order was entered, the bank expressed its understanding that the formula would permit defendants/counter-plaintiffs to recover rental value only and a draft order originally sent to the parties by Judge Snodgrass awarded only damages for rental value.
“The defendánt's/counter-plaintiffs expressed in correspondence to Judge Snod-grass that the formula would permit them to recover both rental value during detention and also fair market value at the time of conversion, ■ and- Judge Snodgrass adopted this view in his final order.
“The ambiguity in the formula to be applied in the calculation of damages goes to the very heart of the parties’ agreement and makes a major difference in the resulting damages calculation. The court finds that the parties never reached a mutual assent as to the formula to be used in the calculation and that the bank never agreed to be bound by the formula that was, in fact, used.
[[Image here]]
“For the reasons set forth, IT IS ADJUDGED that the award set forth in the [‘Amended Mediation/Arbitration Order’] of September 24, 1996, is set aside, and this case shall be restored to the trial docket of this court for further proceedings.”
A writ of mandamus is a drastic and extraordinary remedy, to be issued only where the movant has a clear and indisputable right to the order sought. Ex parte Preston Hood Chevrolet, Inc., 638 So.2d 842 (Ala.1994). The issue presented is whether the petitioners have a clear and indisputable right to require the trial court to enter a judgment on the September 24, 1996, “Amended Mediation/Arbitration Order.” Resolution of this issue ultimately depends upon whether the October 20, 1996, stipulation of agreement between the parties was an enforceable settlement agreement, under the rule stated in Brocato v. Brocato, 332 So.2d 722, 724 (Ala.1976) (“agreements [made in settlement of litigation] are as binding on the parties as any other contract into which they may enter, and will not be set aside except for fraud, collusion, accident, surprise or some ground of this nature”), or whether the parties, in fact, failed to agree on material aspects of how the case was to be resolved by Judge Snodgrass, thereby rendering the stipulation of agreement unenforceable, under the rationale of Ingram v. Pollock, 557 So.2d 1199 (Ala.1989) (holding that there was no “‘meeting of the minds’ with regard to the final terms and execution of a valid and binding settlement agreement”).
After carefully reviewing the record, we cannot hold that Judge Cole’s order is clearly erroneous. Without detailing here all of the evidence (which includes numerous items of correspondence between the attorneys and between the attorneys and Judge Snodgrass), suffice it to say that we agree with the trial court that the October 20, 1995, stipulation of agreement contemplated a process or framework by which this litigation would be resolved by Judge Snodgrass, but only after certain “ground rules” had been agreed upon by the parties. As the trial court noted:
“What started as mediation led to the stipulation of agreement. Simply stated, the agreement provided 1) that the bank would pay damages; and 2) that the amount of *237 damages would be determined by a specified procedure. Judge Snodgrass was to play a part in the calculation of damages, with his participation defined by the stipulation of agreement. The agreement delegated certain factfinding responsibilities to appraisers appointed by the parties and other factfinding to Judge Snodgrass. The agreement contemplated that once these facts were established they would be inserted by Judge Snodgrass into a formula and that the damages award would thereby be calculated.”
The record indicates that the parties engaged in extensive negotiations following the October 20, 1995, stipulation of agreement in an attempt to further define the agreement and to resolve the various differences that arose concerning the list of the property to be evaluated, the appraisal process, etc., and at one point it appeared that the whole process would collapse. (In fact, in a letter to the defendants’ attorneys dated June 2, 1996, Judge Snodgrass stated: “I plan to terminate the mediation on June 30, 1996, if all matters are not resolved by then.”) Although it is apparent from the record and the briefs that the participants never fully agreed as to the exact nature of this process, i.e., whether it was mediation, arbitration, or a combination of the two, the bottom line is that the parties appear to have agreed that Judge Snodgrass’s resolution of the controversy (his calculation of damages) was to be based, in part, upon a formula agreeable to the parties. The record supports the trial court’s finding that the parties never reached an understanding as to the correct formula for Judge Snodgrass to use in calculating the damages. Indicative of the difficulty that the parties had in resolving their differences is the following portion of a communication from the respondent bank’s attorney to Judge Snodgrass on September 12, 1996, only six days before Judge Snodgrass entered his September 18, 1996, order:
“To be clear, Jacobs Bank does not agree with [the contentions of the attorney for one of the petitioners] regarding our agreement on the appropriate formula to be applied. Your letter last week sets out the bank’s understanding of this portion of the agreement correctly, To allow Industrial Technologies to recover for the full value of-the equipment and also its full value for ‘loss of hire’ would allow a windfall. This is another instance where there has been a lack of mutual understanding between the parties on what was intended by the compromise method of trying to resolve this matter by mediation.
[[Image here]]
“I look forward to receiving your suggestions for resolving this latest disagreement.”
This communication was in response to another item- of correspondence from the attorney for one of the petitioners to Judge Snod-grass in which the attorney objected to the formula set out by Judge Snodgrass in a proposed order that he had presented to the attorneys on or about September 11, 1996. That correspondence read as follows:
“Until receipt of your Order, I did not realize that the formula which you previously provided did not include the fact that the appraised value plus the rental value calculated at your three percent (3%) per month factor was to be the total from which the credits were to be given. Also, we had agreed upon approximately $62,-000.00, I believe, worth of equipment, which was not included in the figure you provided. If Mr. Winslow’s appraisal was $320,500.00, then the $60,000.00 in value on the equipment to which [the respondent’s attorney] and our side agreed should be added to that figure.
“I have been under the impression since the mediation that the formula was to be x [the appraised value of the property per the authorized and agreed upon appraiser] times y [the monthly rental value of the property] and when that figure was achieved, the product of x times y would, be added to x for the total value.
“Objection is hereby made to the Mediation Order which you have faxed based upon what ... Richard Hill ... and counsel believe is an incorrect formula which was utilized.
“Objection is also made premised upon the omission of the stipulated value of the equipment whose values were agreed upon.
“The logic behind adding the product of x times y plus x in the calculation of damages was that Jacobs [Bank] had ad *238 mitted conversion of the equipment and the conversion existed for a 35 month period. Not only was Richard Hill entitled to the rental value during the period of conversion, but he was also entitled to be paid for the equipment which was ruined while in the possession and control of Jacobs Bank. This was the reason a salvage value of $3,500.00 was utilized for Mr. Hill retaking possession of the equipment. The salvage value reflected the fact that Mr. Hill’s equipment was ruined.
“The formula .utilized compensates only for the equipment’s conversion period and does not take into account the fact that Jacobs Bank rendered the equipment useless and of little or no value.
“I apologize for not detecting this oversight when you faxed the formula; however, until I read the bottom line on the judgment, I did not realize that your formula was not the same as Mr. Hill and his attorneys felt was the formula agreed upon at mediation.
“Please contact me in order to discuss Mr. Hill’s objections at your earliest convenience.”
We also note that on September 17,1996, the day before Judge Snodgrass entered his September 18, 1996, order, the attorney for Jacobs Bank was still objecting to the manner in which the appraisal of the property was being conducted.
The material disagreement as to how Judge Snodgrass was to resolve this dispute indicates that, although there was considerable effort put forth by the parties, the attorneys, and Judge Snodgrass in an attempt to settle the issues, the parties never had a meeting of the minds with regard to the final methodology by which Judge Snodgrass was to make his decision and, therefore, that Judge Snodgrass’s order was unenforceable as a matter of law. Ingram v. Pollack, supra.
WRIT DENIED.
HOOPER, C. J., and MADDOX, KENNEDY, COOK, and SEE, JJ„ concur.

. Judge Snodgrass entered an order on September 18, 1996; he amended the order on September 24, 1996, to correct an error in the designation of the parties.